| | |
|---|---|
| DONNA BEAVER,    ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | CAUSE NO.: 2:13-cv-269-JEM |
| ) | |
| CAROLYN W. COLVIN,    ) | |
| Acting Commissioner of Social Security,    ) | |
| Defendant.    ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Donna Beaver on

August 2, 2013, and an Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3

[DE 15], filed by Plaintiff on January 2, 2014. Plaintiff requests that the decision of the

Administrative Law Judge denying her benefits on March 23, 2012, be remanded. For the reasons

set forth below, the Court grants Plaintiff's request for reversal and remands this case for further

proceedings.

## PROCEDURAL BACKGROUND

On July 2, 2010, Plaintiff filed an application for disability insurance benefits (DIB) and

Supplemental Security Income (SSI) with the U.S. Social Security Administration (SSA) alleging

that she became disabled on July 28, 2008, due to chronic obstructive pulmonary disease (COPD),

lupus, Sjögrens syndrome, asthma, chronic muscle/joint pain, fatigue, pleural effusion in her left

lung, depression, and anxiety. Plaintiff's application was denied initially and upon reconsideration.

On February 21, 2012, Administrative Law Judge (ALJ) Henry Kramzyk held a hearing at which

Plaintiff, with an attorney representative, and a vocational expert (VE) testified. Following the

hearing, the ALJ concluded that Plaintiff was not disabled. The ALJ made the following findings

under the required five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act though December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since July 28, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD), lupus, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functioning capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that she can lift, carry, push, and pull up 20 pounds occasionally and 10 pounds frequently. She can sit for a total of up to 6 hours per workday. The claimant would have to avoid concentrated exposure to extreme cold and extreme heat, and also avoid concentrated exposure to fumes, odors, gasses, and poor ventilation.

6. The claimant is capable of performing past relevant work as a manager. This work does not require the performance of work-related activities precluded by the claimant's residual functioning capacity. (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 28, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

On June 19, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. On August 2, 2013, Plaintiff filed a civil complaint with this Court.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

# FACTS

## A.    Background

Plaintiff was 48 years old at the time of her alleged onset date and 50 on the date of the hearing.  She has completed her high school education.  She worked in the past as a manager.

## B.    Medical Evidence

Plaintiff's medical records begin in January 2007 with a check-up performed by her primary care physician, Dr. Kameswari Kalluri.  Dr. Kalluri noted that Plaintiff complained of muscle weakness and fatigue.  Dr. Kalluri's notes from various check-ups through June 2009 contain continued complaints of muscle weakness and aches, fatigue, and tiredness.  After a July 25, 2007, check-up, Dr. Kalluri also noted that Plaintiff had a rash on her scalp related to lupus.

On May 21, 2007, Dr. Kalluri referred Plaintiff to rheumatologist Dr. Vinay Reddy to assess her generalized weakness and muscle aches.  On June 12, 2007, Dr. Reddy wrote to Dr. Kalluri, indicating that he did not believe Plaintiff had lupus based on a preliminary examination but that he would have tests run.  Those tests revealed positive ANA, positive SSA and SSB antibodies, but negative ENA and rheumatoid factors.  Dr. Reddy concluded that Plaintiff had Sjögrens syndrome and prescribed her hydroxychloroquine.  Lab results from July 21, 2007, include a statement that "antibodies to SSA and SSB are observed with the highest frequency in Sjögrens syndrome, although these antibodies are also found in significant percentage of patients with [systemic lupus erythematosus]."  AR 410.  Plaintiff testified at the hearing that she stopped seeing Dr. Reddy after she lost her insurance.  Records indicate that her last visit was on September 21, 2009.

In March 2008, Dr. Kalluri first noted that Plaintiff had a left pleural effusion.  When it did not clear up on its own, Plaintiff was referred to Dr. Asaad Jandali at Chest Physician Consultants.  On June 30, 2008, Dr. Jandali noted Plaintiff's history of lupus and Sjögrens but wrote that the

pleural effusion was not likely related to Plaintiff's lupus because her lupus was stable. On July 28, 2008, Dr. Jandali noted that Plaintiff's lupus was in remission.

Plaintiff's lupus is mentioned frequently throughout later records. On February 2, 2010, Dr. Deanna Porte-Keene noted that Plaintiff had had lupus with Sjögrens for two and a half years. She also noted that Plaintiff had problems with becoming easily fatigued and questioned whether it was related to her lupus. On March 16, 2010, a cardiologist to whom Dr. Porte-Keene referred Plaintiff noted Plaintiff's fatigue and stated that Plaintiff "is known to have lupus for which she is under treatment by Dr. Reddy." AR 558. On August 10, 2010, Dr. Porte-Keene noted that Plaintiff had filed for disability because her lupus was affecting her left lung. On September 10, 2010, a consultative examiner noted that Plaintiff had a history of lupus erythematosus "five or six years ago" and that she had erythema on her face on that date. AR 612.

In February 2011, Plaintiff began going to the East Chicago Community Health Center ("ECCHC"). She saw Dr. Gerri Browning in February, April, May, July, and September of 2011 for general check-ups, evaluation for COPD, evaluation of various muscle and joint pains, coughing, and for evaluation of a mass suspected to be cancer. She testified that she went to the ECCHC because it accepted payment on a sliding scale. On February 2, 2011, Dr. Browning noted joint and muscle pain related to Plaintiff's lupus diagnosis.

Plaintiff's records also contain diagnoses and/or treatment for anxiety, depression, minor degenerative changes of the lumbar spine, mild degenerative changes of the right hip, arthritis, vertigo, and high blood pressure. Weight gain was reported after Plaintiff quit smoking.

## C.    Opinion Evidence

On September 8, 2010, state agency physician Fernando Montoya prepared a Physical Residual Functional Capacity Assessment based on his examination of Plaintiff's medical records.

He concluded that Plaintiff was capable of light work with no postural, manipulative, or visual limits, but that she should avoid concentrated exposure to extreme heat, extreme cold, fumes, odors, gases, dusts, and poor ventilation. He also noted that Plaintiff had a "[history of] pleural effusion from lupus," but wrote that it was "resolved." AR 616. On October 4, 2010, state agency psychologist William Shipley completed a Psychiatric Review Technique form based on his examination of Plaintiff's medical records. He concluded that Plaintiff's mental impairments were non-severe, diagnosed her with adjustment disorder, and found mild restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.

On February 12, 2012, Gerri Browning, M.D., a treating physician, filled out a medical source statement. Dr. Browning first addressed Plaintiff's lupus and noted that she had constitutional symptoms of severe fatigue and malaise. Dr. Browning indicated that Plaintiff's lupus at least moderately involved three major organ or body systems: her respiratory system, her mental health, and her immune system. He elaborated that her mental health involvement included anxiety and fluctuating cognition, or "lupus fog," and her immune system involvement included inflammatory arthritis and Sjögren's syndrome. AR 821.

Dr. Browning also offered an opinion on the effects of Plaintiff's impairments on her functional ability. He opined that Plaintiff's symptoms were likely to be severe enough to interfere with her attention and concentration, resulting in her likely being off task twenty-five percent of the time or more. However, Dr. Browning opined that Plaintiff had few limitations with social functioning, concentration, persistence, and pace. Dr. Browning indicated that Plaintiff could walk half a block without rest, sit 20 minutes at one time, stand 45 minutes at one time, sit and stand less than two hours in an eight hour day, needed to be able to shift position at will, and would sometimes need to take unscheduled breaks every two hours for 15 minutes, during which she would need to

lie down or sit quietly.  Dr. Browning further opined that Plaintiff could rarely lift and carry less than 10 pounds and could never carry more; could occasionally twist, never stoop, crouch, or climb ladders; could rarely climb stairs; should avoid all exposure to extreme heat, cold, humidity, wetness, and cigarette smoke; and should avoid even moderate exposure to perfumes, soldering fluxes, solvents and cleaners, fumes, odors, gases, dust, and chemicals.  He also indicated that Plaintiff would likely have good days and bad days, and would likely be absent more than four days per month.

**D.    Plaintiff's Testimony**

Plaintiff first testified about her work history.  In the relevant time period, she performed work as a supervisor of janitorial workers.  At her most recent job, she supervised janitorial subcontractors at various retail stores, which required her to hire subcontractors, inspect their work at various properties, and report back to her employer. She estimated that out of an eight hour workday at that job, she would sit for four hours and stand/walk for four hours.  She testified that she was also expected to lift 25 pounds or more and stated that she could not keep up with the job because she could not lift that much.  She stated that she was terminated in July or August of 2008 while she was on sick-leave due to her pleural effusion.

Plaintiff then testified about her impairments and the effects they have on her functioning. She testified that she suffered from joint pain caused by her lupus and arthritis.  She also testified that she suffers from dry eyes and mouth, anxiety, "stabby" and burning pains in her leg, and an achy shoulder.  AR 23-24.  She also testified that even minimal activity will cause her to become fatigued.  She also stated that she could walk maybe half a block and could only sit 15 to 20 minutes before having to change position.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *see Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

Plaintiff seeks reversal and remand of the ALJ's decision based on the following arguments: (1) the ALJ erred in finding that Plaintiff's lupus did not meet or equal a Listing; (2) the ALJ did not properly weigh a treating source opinion; (3) the RFC analysis was based on improper independent medical determinations and mischaracterization of the evidence; and (4) the ALJ improperly found Plaintiff capable of her past relevant work because he failed to include mental limitations in her RFC. The Court addresses each argument in turn.

**A.      The ALJ's Listing Determination**

Plaintiff first argues that the ALJ disregarded evidence favorable to her without adequate explanation when he found that she did not meet Listing 14.02 for lupus. The Commissioner argues that the Listing determination was supported by substantial evidence.

Appendix 1 of the disability regulations contains a "Listing of Impairments" that the SSA has pre-determined are disabling regardless of a claimant's age, education, or work experience. 20 C.F.R. § 404.1525(a). The Listings first enumerate criteria necessary to establish that a claimant's diagnosis is based on acceptable medical evidence. 20 C.F.R. § 404.1525(c)(2). The remaining criteria establish the severity the impairment much reach to be considered disabling. 20 C.F.R. § 404.1525(c)(2). For example, a claimant meets Listing 14.02 for lupus when she has a diagnosis of systemic lupus erythematosus according to diagnostic requirements established by the American College of Rheumatology and also establishes the requisite severity by showing "[i]nvolvement of two or more organs/body symptoms, with . . . [o]ne of the organs/body systems involved to at least a moderate level of severity; and [a]t least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." 20 C.F.R. Part 404, Subpart P, Appendix 1,

10

§§ 14.00(D)(1), 14.02(A). Organ or body system involvement can include respiratory, cardiovascular, renal, hematologic, skin, neurologic, or immune system disorders. 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 14.00(D)(1).

In general, the claimant bears the burden of proving her condition meets all the criteria of a Listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). However, an ALJ's Listing determination "must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett*, 381 F.3d at 668 (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott*, 297 F.3d at 595-96; *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). If evidence exists in the record that might establish that a Listing's criteria have been met, an ALJ cannot simply ignore it without explanation. *Ribaudo*, 458 F.3d at 583.

The ALJ begins the section of his decision dedicated to the Listings by writing that "there is no evidence that the claimant has a physical impairment or combination or impairments that meet or medically equal one of the listed impairments." AR 77. He then lists the requirements of Listing 3.02 for COPD and for Listing 14.02 for lupus. The Listings section ends there.

Plaintiff argues that there is evidence in the record showing that she met the criteria for Listing 14.02, and she further argues that the ALJ disregarded it without adequate explanation. The ALJ acknowledges that Plaintiff had a diagnosis for lupus. As summarized in the fact section above, the record suggests that Plaintiff's lupus might involve her respiratory system and immune system disorders; namely, that her lupus involves her recurrent pleural effusions and her Sjögrens syndrome. There is also ample evidence in the record that Plaintiff complained of fatigue. Although there is no evidence that Plaintiff experienced fever or weight loss, there is evidence she may have suffered from malaise. Whether this evidence is adequate to find the criteria of the Listing were satisfied is a call for the ALJ, not the Court, to make. *See Clifford*, 227 F.3d at 869 ("We review the

entire administrative record but do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner."). However, this evidence shows that the ALJ's statement that "there is *no evidence* that the claimant has a physical impairment or combination or impairments that meet or medically equal one of the listed impairments" is incorrect. AR 77 (emphasis added). Additionally, the lack of discussion of the evidence that might show Plaintiff meets the lupus Listing makes it impossible for the Court to tell whether the ALJ acknowledged and rejected the evidence or just ignored it entirely. Accordingly, standing by itself, the Listings section provides the type of "perfunctory" analysis for which remand is appropriate. *See Scott*, 297 F.3d at 596 (stating that when the analysis of the evidentiary record is so "perfunctory" that the court cannot meaningfully review an ALJ's Listing determination, remand is required.); *see also Clifford*, 227 F.3d at 874 ("For meaningful appellate review, however, we must be able to trace the ALJ's path of reasoning.").

The Commissioner argues that the ALJ's discussion of evidence related to Plaintiff's lupus in the rest of his decision makes up for the perfunctory discussion in the Listings section. The Commissioner points out that the ALJ addressed Plaintiff's alleged lupus-related muscle spasms and dismissed them because no doctor documented them; that the ALJ noted that Dr. Reddy determined Plaintiff did not have lupus and that Dr. Jandali noted her lupus was in remission; that the ALJ reasonably gave great weight to the opinions of state agency experts who found Plaintiff did not meet a Listing; and that the ALJ addressed and properly dismissed Dr. Browning's opinion that found the necessary criteria of the lupus Listing present. The ALJ also noted two occasions on which Plaintiff treated pain with non-prescription medications and wrote that "[t]hese instances also support the undersigned's finding that the claimant does not meet or medically equal the requirements set forth in the lupus listing, especially since her minor complaints of pain or

discomfort were treated with simple over-the-counter medicine." AR 81.

The Court agrees that the substance of the ALJ's analysis matters more than its form. *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (stating that it is "proper to read the ALJ's decision as a whole" and "would be a needless formality to have the ALJ repeat substantially similar factual analyses" at different steps of the analysis). If the discussion the Commissioner points to actually provided insight into how the ALJ considered the specific criteria of the Listing, it might suffice. However, it does not. Muscle spasms and pain are not among the criteria of the Listing, so those parts of the RFC discussion are irrelevant to the Listing decision. Also, the ALJ never said he relied on the opinions of state agency experts regarding the Listings. Even if he had, an ALJ may only rely on those opinions without any discussion "so long as there is no contradictory evidence in the record," which is not the case here. *Ribaudo*, 458 F.3d at 584. Additionally, Dr. Browning's opinion would not be necessary to finding Plaintiff met the lupus Listing, so discounting it—even if for good reason—cannot by itself explain the ALJ's Listing decision. Finally, the ALJ's noting that Plaintiff's lupus was reportedly in remission on her alleged onset date of July 28, 2008, might explain why he found that the criteria for the lupus Listing were not present on that date, but it does not explain why he found the criteria not present at any later point during her insured period, which did not expire until December 31, 2013.

The only other discussion in the RFC analysis that might give insight into the ALJ's Listing decision relates to Plaintiff's fatigue. Because the lupus Listing requires that two of the four constitutional symptoms—severe fatigue, fever, malaise, or involuntary weight loss—be present and because Plaintiff has not argued she had involuntary weight loss or fever, the existence of severe fatigue is essential to her argument that she met the lupus Listing. Accordingly, if the ALJ's discounting of Plaintiff's reported fatigue in his statement that "there are no indications that

[Plaintiff's] medications of Lopid, Plaquenil, Neurontin, Micardis, Celexa, Moduretic, Zrytec, ProAir, and Advair were not effective in controlling her symptoms" were well-reasoned, it might suffice to explain why he found Plaintiff's lupus did not meet a Listing. AR 81. However, most of the medications listed were prescribed to treat ailments other than lupus or fatigue. Additionally, even if no doctor explicitly stated that Plaintiff's lupus medications were not effective, the record contains numerous instances when Plaintiff complained of fatigue while on her various medications. Because the ALJ's reasoning for discounting Plaintiff's reported fatigue is flawed, it cannot explain why the ALJ found the Listing was not met.

Because none of the ALJ's discussion of Plaintiff's lupus in the RFC assessment provides the Court the missing insight into whether the ALJ acknowledged and rejected the evidence relevant to those specific criteria or just ignored it entirely, it cannot make up for the deficiencies in the Listings section of the ALJ's decision noted above. Accordingly, the Court must remand for the ALJ to make a complete and supported finding as to whether Plaintiff meets the Listing.

**B.      The Weight of Dr. Browning's Opinion**

Plaintiff next argues that the ALJ did not properly weigh the opinion of treating physician Dr. Gerri Browning. The Commissioner responds that the ALJ gave well-supported reasons for giving the opinion little weight.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If an ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment

relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' his reasons." *Elder v. Astrue,* 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

The ALJ wrote:

> [L]ittle weight is given to Dr. Browning's opinions as they are not supported by the objective record. . . . [T]here is no supporting evidence of record that would indicate her inability to maintain employment within the parameters set forth in the residual functional capacity above. In fact, there is no supporting evidence that [Plaintiff] could not even sit, stand, or walk more than 2 hours in an 8-hour workday, that she would need to lie down throughout the day, or that she would be off-task more than 25% of the time, or need more than 4 days off per month.

AR 84.

Plaintiff points to evidence in the record that she argues supports the limitations in Dr. Browning's opinion. She argues that by rejecting that evidence without discussion, the Court cannot assess whether his conclusory statement is grounded in sound reasoning and must, therefore, remand.

If this conclusory statement were the ALJ's only grounds for rejecting Dr. Browning's opinion, the Court might be persuaded that the ALJ failed to adequately explain his decision. However, the ALJ also noted that Dr. Browning completed the opinion form after having only seen Plaintiff "a handful of times," a valid reason to give less weight to a treating source's opinion. AR

82; *see* 20 C.F.R. § 404.1527(c)(2)(i) ("[T]he more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). The ALJ also noted an apparent internal inconsistency in Dr. Browning's opinion, writing that "Dr. Browning opined that [Plaintiff] would be 'off task' 25% or more of her day due to concentration difficulties, even though in the same report she felt the claimant only had mild to no limitations with regard to her concentration." AR 84. Such internal inconsistency is also a valid reason to give less weight to a medical source's opinion. *Knight*, 55 F.3d at 314 ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."). Additionally, although the ALJ did not explicitly state that Dr. Brown's opinion was inconsistent with the record as a whole, his summary throughout his decision of numerous unremarkable tests and examinations in the record provides further explanation for his decision to discount Dr. Browning's opinion. For the foregoing reasons, the Court finds that the ALJ met the minimal articulation standard for the weight he gave to Dr. Browning's opinion.

## C.     RFC Analysis

Plaintiff claims that in forming the RFC, the ALJ made improper independent medical determinations and mischaracterized the medical evidence. The Commissioner argues that the ALJ properly supported his RFC finding.

The Seventh Circuit has repeatedly held that ALJs are not permitted to make their own independent medical findings. *See Myles*, 582 F.3d at 677-78; *Blakes*, 331 F.3d at 570; *Rohan*, 98 F.3d at 970. If ALJs mischaracterize the evidence in the record, they fail to trace their reasoning to their conclusion. *Scott*, 297 F.3d at 595. If the ALJ fails to trace his reasoning to his conclusion, the ALJ fails to "'build an accurate and logical bridge from the evidence to [the] conclusion,'" thereby preventing the reviewing court from "assess[ing] the validity of the agency's final decision

16

and afford[ing] [a claimant] meaningful review." *Giles*, 483 F.3d at 487 (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski*, 245 F.3d at 889. ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

The ALJ stated that Plaintiff was "assigned a relatively normal Global Assessment Function (GAF) score of 60, which is given great weight and is consistent with an individual who has generally mild symptoms of a mental impairment." AR 77. Plaintiff argues that a GAF score of 60 actually denotes moderate, not mild, symptoms of mental impairment and that the ALJ thus mischaracterized the severity of Plaintiff's mental impairments. The Commissioner concedes that a 60 GAF score denotes moderate symptoms but argues that because a score of 61 indicates mild symptoms, 60 is still "generally" mild. Def. Br. 16. If the ALJ had relied on the GAF score as just one minor piece of evidence, his mischaracterization of it would not have affected his decision much. However, because he put "great weight" on the GAF score, his mischaracterization concerns the Court.

Plaintiff also claims that ALJ mischaracterized the evidence concerning Plaintiff's muscle spasms and her pain. The ALJ claimed that "even though [Plaintiff] has been examined a number of times, no muscle spasms were noted." AR 80. Plaintiff points out that muscle spasms were noted by Dr. Browning during her examination of Plaintiff. The Commissioner concedes that Dr. Browning did note muscle spasms, but argues that because there were no other references to muscle spasms in the record, it "proves no meaningful error." Def. Br. 19. Plaintiff also points to another of the ALJ's misreadings of the record. When summarizing an exam, the ALJ stated that Plaintiff "refused to perform some of the exercises . . . " AR 82. However, Plaintiff points out that she did

17

not refuse to perform the exercises, but, as the physician noted, Plaintiff was unable to perform the exercises due to pain. The Commissioner argues that the ALJ made no negative inferences based on his misstatement of the record, so it does not constitute reversible error. The Court agrees. While the ALJ did misunderstand or misstate the record on the two points above, his mistakes were minor and his conclusions did not rely on them. Accordingly, they do not prevent the Court from being able to trace the path of the ALJ's reasoning. *Scott*, 297 F.3d at 595.

Plaintiff also argues that the ALJ improperly made an independent medical determination about Plaintiff's medications and their effectiveness. The ALJ noted that Plaintiff was "consistently taking several medications, and these have remained unchanged for some time, indicating their effectiveness." AR 83. Plaintiff first argues that the ALJ made a mistake of fact because Plaintiff's medication did change. However, the Court is less concerned with the ALJ's small factual error as it is about the ALJ's inference that a lack of change in medications " indicat[es] their effectiveness." AR 83. The Seventh Circuit has repeatedly held that ALJs are not to make their own independent medical findings. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Plaintiff argues that the ALJ made an improper medical determination by implying an unchanged medication regimen means that the medications are effective at alleviating pain. The Commissioner argues that the ALJ's inference was supported by substantial evidence elsewhere in the opinion. However, the Commissioner only cites examples showing that particular medications had beneficial effects. The Commissioner does not cite any doctor opining that taking multiple medications consistently over time is indicative of their effectiveness. Plaintiff points out that there are several reasons why a medication regimen might remain unchanged despite its ineffectiveness; for example, adding more medications into Plaintiff's regimen might produce negative side effects. In any case, that

determination is for a doctor to make, not an ALJ. *Rohan*, 98 F.3d at 970. ("And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Clifford*, 227 F.3d at 870. Therefore, the ALJ erred by making an independent medical finding.

Because of these errors, this Court cannot trace the ALJ's reasoning to his conclusions. *Scott*, 297 F.3d at 595. Therefore, the ALJ failed to build a logical bridge to his conclusion, and the decision requires remand. *Giles*, 483 F.3d at 487 (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618. ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions.").

**D.     The ALJ's past relevant work determination**

Finally, Plaintiff argues that the ALJ failed to include an analysis of Plaintiff's mental limitations in his RFC analysis, resulting in an improper finding that Plaintiff could perform her past relevant work as a manager.     The RFC is an assessment of what work-related activities a claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1). In determining an RFC, an ALJ must take into account all of a claimant's impairments, even non-severe ones. *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (citing 20 C.F.R. § 404.1523); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003).

At step two of the disability inquiry, the ALJ determined—based on state agency psychologist William Shipley's Psychiatric Review Technique form—that Plaintiff had mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. He concluded, however, that Plaintiff's mental impairments were not severe. In his RFC analysis, the ALJ stated that he gave Dr. Shipley's opinion "great weight" and repeated the limitations he found at step two. AR 83. Ultimately, however, the ALJ

did not include any mental limitations in Plaintiff's RFC. He also did not explain, as he is required to do, why he declined to incorporate any of the mild limitations he found. *See Golembiewski*, 322 F.3d at 918. ("Having found that one or more of [Plaintiff's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of this entire constellation of ailments—including those impairments that in isolation are not severe." (citing 20 C.F.R. § 404.1523; *Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir.2002); *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir.2000)). The Commissioner argues that nothing in the record warranted including limitations due to mental impairments in Plaintiff's RFC. However, the ALJ did not explicitly draw this conclusion in his analysis, and the Commissioner may not now make new arguments that the ALJ did not include in his analysis. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *see also Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace. On appeal, the Commissioner may not generate a novel basis for the ALJ's determination.") (citing *Chenery*, 318 U.S. at 87-88; *Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir. 2010)). Accordingly, on remand, the ALJ is instructed to account for Plaintiff's mental limitations in her RFC or explain why they do not warrant additional accommodations.

Plaintiff also argues that the ALJ failed to discuss Plaintiff's testimony that she could not perform her past relevant work because she could not meet the lifting or standing requirements. However, as the Commissioner notes, in determining the past relevant work of a claimant, the ALJ need only focus on how a job is performed generally, not how the claimant specifically performed it. *Getch v. Astrue*, 539 F.3d 473, 482 (7th Cir. 2008); *see Smith v. Barnhart*, 388 F.3d 251, 253 (7th Cir. 2004); *see also* SSR 82–61, 1982 WL 31387, at *2 (1982) (explaining that a claimant who

"cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy" should not be found to be disabled).  The VE testified that the lifting and standing requirements Plaintiff addressed in her testimony are not generally the requirements of a manager.  Therefore, omitting Plaintiff's testimony concerning the lifting and standing requirements of her previous employment was not an error because those were not requirements to perform her past relevant work in general.

Accordingly, on remand the ALJ is not required to consider the actual lifting and standing requirements of Plaintiff's previous employment in determining whether she can do her past relevant work.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 15] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 26th day of September, 2014.

s/ John E.  Martin
MAGISTRATE JUDGE JOHN E.  MARTIN
UNITED STATES DISTRICT COURT

cc:      All counsel of record